**Jose Aguado CERVANTES,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 01–56929.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 6, 2002.

Submitted Dec. 13, 2002.

Filed June 2, 2003.

Stephen J. Estey, Estey & Bomberger, LLP, San Diego, CA, for the plaintiff-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when oral argument was heard and opinion was filed), Peter J. Sholl, Assistant United States Attorney (on the brief), Timothy C. Stutler, Assistant U.S. Attorney (at oral argument), San Diego, CA, for the defendant-appellee.

Before: BROWNING, KOZINSKI and WARDLAW, Circuit Judges.

## OPINION

WARDLAW, Circuit Judge.

Although rare, on occasion, we see arguments that simply fail the straight-face test. The United States' assertion that the "detention of goods" exception to the sovereign immunity waiver under the Federal Tort Claims Act applies to its negligent failure to remove 119 pounds of marijuana hidden in a car it sold to Jose Aguado Cervantes, whom it later incarcerated for "transporting" those very drugs, is one. Although we agree with the district court that Cervantes cannot recover damages for false imprisonment or false arrest because the customs agents had reasonable cause to believe his arrest was lawful, the United States' defense to his negligence claim is patently without merit. We therefore affirm the district court's order dismissing Cervantes's false imprisonment and false arrest claims, and reinstate Cervantes's negligence claim.

## I. Standard of review

■ We review de novo a district court's dismissal of an action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 939 (9th Cir.2002). In determining whether dismissal was properly granted, we assume all factual allegations are true and construe them in the light most favorable to the plaintiff. *See id.*

## II. Background

At a United States Marshals Service ("USMS") auction held in San Diego, California on July 15, 1999, Cervantes, a 67–year–old Mexican national and resident, purchased the vehicle that would lead to his first and, according to the record before us, only experience with criminal law enforcement. Some four months earlier, the vehicle had been seized by the Immigration and Naturalization Service ("INS") in connection with its use in transporting undocumented aliens. Cervantes alleges that neither the INS nor the USMS properly searched the vehicle prior to its sale at auction and that, if they had, they would have discovered 119 pounds of marijuana

secreted in its bumpers. Cervantes remained similarly unaware of the contraband until its discovery by United States Customs agents as he attempted to cross the United States border on October 22, 1999. Although Cervantes denied knowledge of the marijuana and informed the agents that he had purchased the vehicle at a USMS auction, he was arrested and incarcerated for importing illegal drugs into the United States. The United States moved to dismiss all charges, according to Cervantes, after it realized that it had failed to remove the marijuana after the vehicle's initial seizure. He was released on February 9, 2000, having spent three and one-half months in prison.

## III. Discussion

### A. The Federal Tort Claims Act

■ The United States can be sued only to the extent that it waives its sovereign immunity from suit. *See United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, sets forth the circumstances under which the federal government waives this immunity. In general, the FTCA provides federal liability for tort claims "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674.

The FTCA's broad waiver of sovereign immunity is limited, however, by exceptions enumerated in § 2680, "a statutory reservation of sovereign immunity for a particular class of tort claims." *Gager v. United States,* 149 F.3d 918, 920 (9th Cir. 1998). The Supreme Court has explained that these exceptions:

> [1] ensur[e] that "certain governmental activities" not be disrupted by the threat of damages suits;[2] avoid[ ] exposure of the United States to liability for excessive or fraudulent claims; and [3] [avoid] extending the coverage of the Act to

suits for which adequate remedies were already available.

*Kosak v. United States,* 465 U.S. 848, 858, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). Where a § 2680 exception applies, the United States has not waived its immunity from suit, and a court lacks jurisdiction over such claims.

### B. False arrest and false imprisonment

■ Cervantes's claims for false arrest and false imprisonment are barred by his lawful arrest upon probable cause, i.e., the discovery of contraband in his vehicle by Customs agents at the United States border. California law, applicable here 7132 under 28 U.S.C. § 1346(b)(1), protects a law enforcement officer from liability for false arrest or false imprisonment where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful. *See* Cal.Penal Code § 847(b); *see also Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (an "officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved"), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir.1998). Cervantes's presence in a vehicle carrying illegal drugs was sufficient probable cause for his arrest. *See United States v. Carranza,* 289 F.3d 634, 641 (9th Cir.2002). Therefore, the district court properly dismissed his claims for false arrest and false imprisonment.

### C. Negligence

■ Cervantes's claim for negligence is an entirely different matter. We are compelled to note that the United States' assertion, as its sole defense, that this claim

is barred by the "detention of goods" exception is so off-the-mark as to be embarrassing.[1]

The "detention of goods" exception provides that the FTCA shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the *detention of any goods* ... by any officer of customs or excise or any other law-enforcement officer." 28 U.S.C. § 2680(c) (emphasis added). The Supreme Court has explained, in a different context, that "the crucial portion of the provision[,] 'any claim arising in respect of' the detention of goods[,] means any claim 'arising out of' the detention of goods." *Kosak*, 465 U.S. at 854, 104 S.Ct. 1519.

We conclude from our review of *Kosak* and other applicable authority that Cervantes's claim does not "aris[e] in respect of ... the detention" of the vehicle because the alleged negligence had nothing at all to do with the car's detention, but only its subsequent sale. The government may have obtained the car from the detention, but that misses the point: The negligent act was the government's decision to sell the car without first inspecting it, an independent and intervening event from the detention itself. The source of the car may have increased the chance something was wrong with it, but it did not cause the wrong; if anything, it makes the failure to inspect all the more egregious.

■■■ Case law interpreting the detention of goods exception clarifies that it applies only where goods are damaged during or because of the detention. *See Kosak*, 465 U.S. at 849–50, 854, 862, 104 S.Ct. 1519 (barring claim for damage to plaintiff's art collection that occurred during detention); *Matsushita Elec. Co. v. Zeigler*, 158 F.3d 1167, 1168 (11th Cir.

1998) (barring claim that Customs officer damaged imported machine during inspection); *Gasho v. United States*, 39 F.3d 1420, 1433–34, 1436 (9th Cir.1994) (barring claims for emotional distress and abuse of process arising from detention and seizure of plaintiff's aircraft); *Goodman v. United States*, 987 F.2d 550, 551–52 (8th Cir.1993) (barring claim for damage caused by customs official's negligent unloading, inspection, and reloading of freight container). The exception does not protect the government, whatever it does with a once-detained good, for the rest of that good's existence. The plain text of the statute says the claim must relate to the detention, not to any activity that happened to involve a once-detained item. The government cites a Fifth Circuit case, *Solus Ocean Systems, Inc. v. United States Customs Service*, 777 F.2d 326 (5th Cir.1985), which reasoned that "[t]he sale [of detained goods] was the result of the goods having remained with Customs for well over a year and was merely part of the natural progression of Customs' detention." *Id.* at 328. As a preliminary matter, we are not bound by the Fifth Circuit. More importantly, the Fifth Circuit's "natural progression" approach, the validity and extent of which we need not address, does not even apply here, where the harmful act was independent of and subsequent to the detention. The text of the exception is limited to claims arising from the detention, not independent activities subsequent to it; and the purpose of the exception is to immunize government activities associated with the detention, again, not independent activities subsequent to it.

The government's citation to cases applying § 2680(c)'s exemption for tax assessment or collection is similarly unavail-

---

1. It is for this reason that, during oral argument, we commented on the lack of merit of the government's defense and ordered the parties to immediately discuss settlement, de- ferring submission of the case for a week. We were advised that settlement discussions were unproductive.

ing because, unlike here, the harm alleged in those cases occurred during or because of the assessment or collection efforts. *See Perkins v. United States,* 55 F.3d 910, 912–13 (4th Cir.1995) (barring claim for wrongful death that occurred during recovery from coal mine of delinquent taxpayer's property); *Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir.1981) (barring invasion of privacy claim arising from IRS agent's photographing plaintiffs' residence because agent was taking photos as part of investigation into plaintiffs' claimed casualty loss). Indeed, Cervantes does not complain about the manner in which the vehicle was detained or seized, only about the condition in which it was sold.

Our view that § 2680(c) does not apply is consistent with *Kosak's* articulation of the rationale underlying the FTCA's exceptions. First, *Kosak* counsels that a broad interpretation of § 2680(c) is appropriate to protect the government's interest in enforcing its laws from disruption by suits for damages, a concern not present in Cervantes's case. Specifically, the Court noted that imposing liability would impede the enforcement of customs laws:

> One of the most important sanctions available to the Customs Service in ensuring compliance with the customs laws is its power to detain goods owned by suspected violators of those laws. Congress may well have wished not to dampen the enforcement efforts of the Service by exposing the Government to private damages suits by disgruntled owners of detained property.

465 U.S. at 859, 104 S.Ct. 1519 (footnote omitted). We see no analogous dampening effect of Cervantes's suit on the Customs Service's ability to protect our borders.

Second, *Kosak* explained that an exception would be appropriate where it limited the United States' exposure to excessive or fraudulent claims. *See id.* at 858, 104 S.Ct. 1519. Such exception is proper given the exigencies of border patrol:

> The Customs Service does not have the staff or resources it would need to inspect goods at the time it seizes them. Lacking a record of the condition of a piece of property when the Service took custody of it, the Government would be in a poor position to defend a suit in which the owner alleged that the item was returned in damaged condition.

*Id.* at 859, 104 S.Ct. 1519. The government may have similar problems finding people to inspect cars and make records before selling the cars at auction. But *Kosak* was not creating a safe harbor for all government activity; rather, it was explaining the rationale behind Congress's enumerated exceptions. Cervantes's suit, if it presents any danger of excessive or fraudulent claims, does so because the government decided to auction off cars, not because it detained or inspected goods.

Third, our result is consistent with *Kosak's* explanation that Congress did not intend the FTCA to provide recovery where adequate remedies exist. *See id.* at 858, 104 S.Ct. 1519. Cervantes is entitled to recover, if at all, only under the FTCA.

In asserting the detention of goods exception as its defense, rather than compensating a plaintiff it has seriously wronged, the United States thumbs its nose at its obligation to see that justice is done. The Supreme Court long ago pronounced the special obligation of the United States Attorney to serve the interests of justice:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... [H]e is in a peculiar and very

definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In asserting a last-ditch, far-fetched defense in this case, the United States Attorney failed to meet this obligation. We trust that this is but a momentary lapse.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**