358 F.3d 1137
 Francis A. ORFF; Brooks Farms II; Brooks Farms IV; Brooks Farms V; G.S. Farms; Five-D Westside Farms, Inc.; R & S Farming; Cardella Ranch; Gramis Family Farms II; Edwin R. O'Neill, Bro Partnership; BTO Partnership; EJC Partnership; ERO Partnership; JEO Partnership; SLO Partnership; TBO Partnership; C.S. Stefanopoulos Trust; Elena Stefanopoulos Trust; Estate of Helen Stefanopoulos; D.D. Stefanopoulos Trust;
Pagona Stefanopoulos; Sumner Peck Ranch, Inc.; Y. Stephen Pilibos; Pilibos Children's Trust, Plaintiffs-Appellants,
Westlands Water District, Plaintiff-Intervenor,
v.
UNITED STATES of America; United States Department of the Interior; Bureau of Reclamation; Fish and Wildlife Service; United States Department of Commerce; National Marine Fisheries Service; Ronald H. Brown, Secretary of Commerce; Bruce Babbitt, Secretary of the Interior, Defendants-Appellees,
Natural Resources Defense Council; United Anglers of California; Save San Francisco Bay Association; California Waterfowl Association; Sierra Club; Bay Institute of San Francisco; Environmental Defense Fund; California Striped Bass Association; Trout Unlimited of California; Sacramento River Council; California Sportfishing Protection Alliance; Pacific Coast Federation of Fisherman's Associations; The Wilderness Society, Defendants-Intervenors-Appellees.
 No. 00-16922.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 11, 2003.
 Filed February 18, 2004.
 
 COPYRIGHT MATERIAL OMITTED William M. Smiland (argued) and Theodore A. Chester, Jr., Smiland & Khachigian, Los Angeles, CA, for plaintiffs-appellants Francis A. Orff, et al.
 Janet K. Goldsmith, William T. Chisum and J. Port Telles, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, CA; and Stuart L. Somach (argued), Somach Simmons & Dunn, Sacramento, CA, for plaintiff-intervenor-appellant Westlands Water District.
 Maria A. Iizuka and Todd S. Aagaard (argued), Department of Justice, Washington, D.C., for defendants-appellees United States of America, et al.
 Hamilton Candee and Michael E. Wall (argued), Natural Resources Defense Council, San Francisco, CA; and Philip F. Atkins-Pattenson, Sheppard, Mullin, Richter & Hampton, LLP, San Francisco, CA, for defendants-intervenors-appellees Natural Resources Defense Council, et al.
 Appeal from the United States District Court for the Eastern District of California, Oliver W. Wanger, District Judge, Presiding. D.C. No. CV-93-05327-OWW.
 Before: NOONAN, THOMAS and RICHARD R. CLIFTON, Circuit Judges.
 Opinion by Judge Clifton.
 OPINION
 CLIFTON, Circuit Judge:
 
 
 1
 This appeal poses the issue of whether sovereign immunity bars individual landowners and water users (collectively, "the farmers") of the Westlands Water District ("Westlands") from suing the United States for allegedly having violated a contract the United States entered into with Westlands for the delivery of water. The district court originally concluded that sovereign immunity had been waived and proceeded to rule on the merits of the farmers' claims. The court then changed its mind on reconsideration, ruling that sovereign immunity barred the farmers' claims. We affirm that ruling. We agree with the district court that sovereign immunity deprived it of jurisdiction to hear the farmers' claims. Because the district court lacked jurisdiction to entertain those claims, we vacate the district court's rulings on the merits of those claims.
 
 I. BACKGROUND
 
 2
 This is another in a long line of cases involving the Central Valley Project (the "CVP"), the nation's largest federal water management project. Westlands receives water from the San Luis Unit of the CVP pursuant to a 1963 contract (the "1963 contract") with the United States.[1] The validity and enforceability of the 1963 contract was upheld in 1986 pursuant to a stipulated judgment in Stipulated Judgment, Barcellos & Wolfsen, Inc. v. Westlands Water Dist., (E.D.Cal.) (No. CV 79-106-EDP) ("Barcellos"), which resolved litigation that arose out of the government's assertion in 1978 that the 1963 contract was invalid. The Barcellos judgment required the government to perform the 1963 contract.
 
 
 3
 In 1990, the Sacramento River winter-run chinook salmon was listed as a threatened species under the Endangered Species Act (the "ESA"), 16 U.S.C. §§ 1531-1545. In 1993, the delta smelt of the Sacramento-San Joaquin Delta was also designated as a threatened species. The National Marine Fisheries Service determined that both species were jeopardized by the continued operation of the CVP. In response, the Bureau of Reclamation (the "Bureau") reduced Westlands' allocation of CVP water for 1993 to fifty percent of its contractual supply. The Bureau made this reduction pursuant to the ESA, which required federal agencies to avoid jeopardizing threatened species, and pursuant to the Central Valley Project Improvement Act (the "CVPIA"), which sought to protect the requirements of fish and wildlife in the use of CVP water. See generally O'Neill v. United States, 50 F.3d 677, 680-82 (9th Cir.1995) (discussing the aforementioned events more thoroughly).
 
 
 4
 Landowners and water users within the Westlands district then brought suit in district court, claiming that the reduction violated the 1963 contract as upheld by Barcellos. The district court held that Article 11 of the 1963 contract freed the government from liability for the reduction. Barcellos & Wolfsen v. Westlands Water Dist., 849 F.Supp. 717, 721-23 (E.D.Cal.1993) ("Barcellos III"). We affirmed, holding that Article 11(a) of the Contract "unambiguously absolves the government from liability for its failure to deliver the full contractual amount of water where there is a shortage caused by statutory mandate." O'Neill, 50 F.3d at 689. We noted, however, that the Westlands members could challenge the merits of the Bureau's compliance with the ESA and CVPIA in a separate case. Id.
 
 
 5
 Westlands instituted the present action in May 1993. The Natural Resources Defense Council ("NRDC") and the farmers subsequently intervened. In 1995, Westlands dismissed its complaint without prejudice. The farmers remained as plaintiffs and filed a second amended complaint.
 
 
 6
 On June 5, 1998, the district court filed an order that wiped out most of the farmers' claims. The court dismissed the statutory claims for lack of subject matter jurisdiction pursuant to the Tucker Act, although it noted that the farmers may be able to bring those claims in the Court of Federal Claims. The court rejected the farmers' contention that the reclamation statutes constituted contracts and dismissed those claims for lack of subject matter jurisdiction.
 
 
 7
 That left remaining: (1) the farmers' claim that the reduction violated appropriative water rights; (2) the farmers' claim that the reduction violated trust law; (3) the farmers' claim that certain CVPIA surcharges violated the 1963 contract and the Constitution; and (4) the farmers' claim that the reduction was in breach of the 1963 contract. With regard to the first two claims, the farmers asserted that the 1963 contract incorporated appropriative water rights and trust obligations. The farmers argued that all four of their remaining claims therefore arose under the 1963 contract, to which the government's waiver of sovereign immunity under 43 U.S.C. § 390uu allegedly applied. The court agreed with the farmers that it had jurisdiction to consider these claims because the farmers were "a contracting entity" under § 390uu. But the court ruled against the farmers on the merits of the first three claims, granting summary judgment for the government. The farmers managed to keep their case alive when the court ruled that they had raised triable issues of fact with regard to the fourth claim.
 
 
 8
 Those issues would never be tried, however. On April 12, 2000, the court altered its ruling on sovereign immunity pursuant to a motion for reconsideration by the government. The court ruled that, in light of our decision in Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206 (9th Cir.1999), the farmers were only incidental, not intended, third-party beneficiaries of the 1963 contract. As such, they were not "a contracting entity" under § 390uu toward whom the government had waived sovereign immunity. Finding no other basis for a waiver of sovereign immunity, the court entered final judgment for the government on August 1, 2000.
 
 
 9
 The farmers timely appealed. Though it had previously dismissed its claims as a plaintiff, Westlands returned to the litigation as an intervenor, out of concern that its rights could be affected. Both Westlands and the NRDC filed briefs in this appeal as intervenors.
 
 
 10
 II. SOVEREIGN IMMUNITY BARS THE FARMERS' SUIT
 
 
 11
 The government argues that the farmers' claims are barred by sovereign immunity. We review issues of sovereign immunity and subject matter jurisdiction de novo. Clinton v. Babbitt, 180 F.3d 1081, 1086 (9th Cir.1999). "It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir.1985). We strictly construe in favor of the government the scope of any waiver of sovereign immunity. Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999). Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction. Gilbert, 756 F.2d at 1458.
 
 
 12
 As a preliminary matter, we reject the farmers' claim that the government's sovereign immunity defense is barred by issue and claim preclusion pursuant to the decision in Barcellos & Wolfsen, Inc. v. Westlands Water Dist., 491 F.Supp. 263 (E.D.Cal.1980) ("Barcellos I"). For issue preclusion to apply, "the issues litigated must not be `merely similar,' but must be `identical.'" Central Delta Water Agency v. United States, 306 F.3d 938, 953 (9th Cir.2002) (citation omitted). In Barcellos I, the district court rejected the government's sovereign immunity defense on two alternate grounds. The first ground was that the ultra vires exception to sovereign immunity applied because the government had allegedly committed an ultra vires agency action. Barcellos I, 491 F.Supp. at 265-66. The second ground was that sovereign immunity had been waived pursuant to the McCarran Amendment, 43 U.S.C. § 666, because the relief sought fell under that amendment.[2] Id., at 266-67.
 
 
 13
 Neither ground applies in this case. The farmers do not allege that the government committed an ultra vires agency action. Nor does the McCarran Amendment apply. This is a private lawsuit for damages between the farmers and the government, which is not the type of suit contemplated by the McCarran Amendment:
 
 
 14
 The McCarran Amendment provides that the United States is deemed to have waived its immunity in any suit for the adjudication of rights to the use of water of a river system or other source [(§ 666(a)(1))], or for the administration of such rights [(§ 666(a)(2))]. The McCarran Amendment, however, does not authorize private suits to decide priorities between the United States and particular claimants, only suits to adjudicate the rights of all claimants on a stream. Dugan v. Rank, 372 U.S. 609, 617-18, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (citation omitted).
 
 
 15
 Metro. Water Dist. of S. Cal. v. United States, 830 F.2d 139, 144 (9th Cir.1987), aff'd by California v. United States, 490 U.S. 920, 109 S.Ct. 2273, 104 L.Ed.2d 981 (1989) (per curiam); see also United States v. Dist. Court In & For Water Div. No. 5, Colo., 401 U.S. 527, 529, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971) (The McCarran Amendment "does not cover consent by the United States to be sued in a private suit to determine its rights against a few claimants."). This is not a suit to adjudicate or administer the rights of all claimants on a stream.[3]
 
 
 16
 We note that the farmers did not even plead jurisdiction under the McCarran Amendment in their second amended complaint; they pleaded only under § 390uu.
 
 
 17
 Because the issue in Barcellos I is not identical to the issue presented in this case, the government is not issue precluded from claiming sovereign immunity. Nor does claim preclusion apply. One requirement of claim preclusion is that "the prior litigation involved the same claim or cause of action as the later suit." Central Delta Water Agency, 306 F.3d at 952. In evaluating this requirement, the most important consideration is "`whether the two suits arise out of the same transactional nucleus of facts.'" Id. (citation omitted). "[W]hen considering whether a prior action involved the same `nucleus of facts' for preclusion purposes, we must narrowly construe the scope of that earlier action." Id. at 953. As explained above, the facts the district court relied on to find a waiver of sovereign immunity in Barcellos I do not apply here. Additionally, this action arises out of the government's allocation of CVP water for 1993 based on designations of threatened species that occurred long after Barcellos I had been decided. As such, the nucleus of facts underlying this action differs from the nucleus of facts underlying Barcellos I.
 
 
 18
 The farmers' suit may nevertheless proceed in district court if the § 390uu waiver of sovereign immunity applies. Section 390uu provides in its entirety:
 
 
 19
 Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. Any suit pursuant to this section may be brought in any United States district court in the State in which the land involved is situated.
 
 
 20
 43 U.S.C. § 390uu (emphasis added). The farmers assert that they are intended third-party beneficiaries of the 1963 contract and therefore "a contracting entity" under § 390uu. Our holding in Klamath compels us to reject this argument.
 
 
 21
 The plaintiffs in Klamath were irrigators in the Klamath Basin. The California Oregon Power Company ("Copco") and its successor in interest, PacifiCorp, operated a dam (the "Dam") in the Klamath Basin pursuant to a 1956 contract with the United States. Klamath, 204 F.3d at 1209. It was undisputed that "the Dam was built to help the United States satisfy its contractual obligations to water users in the basin, including the Irrigators." Id. "Copco's interest related primarily to controlling the flow of water to the Copco-owned hydroelectric facilities downstream from the Dam." Id.
 
 
 22
 Just as the 1963 contract is subject to the requirements of subsequently-enacted statutes such as the ESA and the CVPIA, see O'Neill, 50 F.3d at 686, operation of the Dam in Klamath was also subject to the requirements of such statutes, see Klamath, 204 F.3d at 1209. In 1997, the Bureau of Reclamation issued an interim operating plan for the Dam in response to the designation of certain fish species in the Klamath River and Klamath Basin as threatened or endangered, and in consideration of the rights of certain Indian tribes. Id. at 1209-10. The Bureau and PacifiCorp modified the 1956 contract to implement the interim plan, but did not include the irrigators in the negotiations leading to the modification. Id. at 1210. The irrigators sued for breach of the 1956 contract based on their alleged status as third-party beneficiaries. Id.
 
 
 23
 We began our analysis by observing that, "[b]efore a third party can recover under a contract, it must show that the contract was made for its direct benefit — that it is an intended beneficiary of the contract." Id. While "the intended beneficiary need not be specifically or individually identified in the contract," it must still "fall within a class clearly intended by the parties to benefit from the contract." Id. at 1211. We presumed the irrigators to be incidental, rather than intended, beneficiaries of the 1956 contract unless the contract evinced "a clear intent to the contrary":
 
 
 24
 Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary. Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.
 
 
 25
 Id. (emphasis added; internal citations and quotation marks omitted). We concluded after examining the plain language of the 1956 contract that the irrigators were not intended third-party beneficiaries: "The plain language of the Contract is sufficient to rebut the contention that the Irrigators are intended third-party beneficiaries. Neither Article 2 nor Article 6 illustrates an intention of Copco or the United States to grant the Irrigators enforceable rights." Id.
 
 
 26
 Like the irrigators in Klamath, the farmers in our case fail to satisfy the "clear intent" standard required to establish intended beneficiary status. The farmers rely on Articles 15 and 11(b) of the 1963 contract. To be sure, these provisions do make reference to third party water users, but neither provision evinces a clear intent to make the farmers intended beneficiaries. Though the opinion in Klamath did state that an explicit reference to a third party was not a necessary condition to finding that party to be an intended beneficiary, it in no way implied that an explicit reference was a sufficient condition to finding that party to be an intended beneficiary.
 
 Article 15 reads in pertinent part:
 
 27
 Should any assessment or assessments required by the terms of this contract and levied by the District against any tract of land or water user in the District and necessary to meet the obligations of the District hereunder be judicially determined to be irregular or void ..., then such tract shall have no right to any water furnished to the District pursuant to this contract, and no water made available by the United States pursuant thereto shall be furnished for the benefit of any such lands or water users, except upon the payment by the landowner of his assessment or a toll charge for such water, notwithstanding the existence of any contract between the District and the owner or owners of such tract. Contracts, if any, between the District and the water users involving water furnished pursuant to this contract shall provide that such use shall be subject to the terms of this contract. It is further agreed that the payment of charges at the rate and upon the terms and conditions provided for herein is a prerequisite to the right to the use of water furnished to the District pursuant to this contract, and no irregularity in levying taxes or assessments by the District nor lack of authority in the District, whether affecting the validity of District taxes or assessment or not, shall be held to authorize or permit any water user of the District to demand water made available pursuant to this contract unless charges at the rate and upon the terms and conditions provided for herein have been paid by such water user.
 
 
 28
 We agree with the district court that "[r]ather than manifesting an intent to create enforcement rights in individual water users, [Article 15] focuses on the absolute requirement that users first pay assessments and charges to the Districts to obtain water. It is only the District, not the water users, that has directly enforceable rights to obtain water from the government under the 1963 contract." Mem. Op. & Order Re Federal Defs.' Mot. to Recons., Orff v. United States, at 12-13 (E.D.Cal.2000) (No. 93-5327).
 
 
 29
 Article 15's references to third party "water users" do not establish that the farmers possess enforceable rights against the government. Article 15 states that "Contracts, if any, between the District and the water users involving water furnished pursuant to this contract shall provide that such use shall be subject to the terms of this contract." (emphasis added) This sentence, however, in no way delineates a contractual relationship between the farmers and the government. It only describes a potential contractual relationship between Westlands and the farmers. Article 15 also provides that "no irregularity in levying taxes or assessments ... shall be held to authorize or permit any water user of the District to demand water made available pursuant to this contract unless charges at the rate and upon the terms and conditions provided for herein have been paid for by such water user." This only seems to reinforce the view that the farmers must satisfy certain conditions precedent before obtaining water from Westlands; whatever rights the farmers accordingly have under Article 15 are against Westlands, not the government. Indeed, Article 15 similarly states that "the payment of charges at the rate and upon the terms and conditions provided for herein is a prerequisite to the right to the use of water furnished to the District." (emphasis added). Article 15, while defining in part the farmers' rights to water as provided by Westlands, does not demonstrate "an intention ... to grant [the farmers] enforceable rights" against the government.
 
 
 30
 The farmers' reliance on Article 11(b) is similarly unavailing. Article 11(b) provides in full:
 
 
 31
 In the event that in any year there is delivered to the District by reason of any shortage or apportionment as provided in subdivision (a) of this article or any discontinuance or reduction of service as set forth in subdivision (d) of Article 9 hereof, less than the quantity of water which the District otherwise would be entitled to receive, there shall be made an adjustment on account of the amounts paid to the United States by the District for water for said year in a manner similar to that provided for in Article 7. To the extent of such deficiency, such adjustment shall constitute the sole remedy of the District or anyone having or claiming to have by, through, or under the District the right to the use of any of the water supply provided for herein.
 
 
 32
 The farmers claim that the "anyone" referenced by Article 11(b) includes them. Article 11(b) does indicate that individuals that have a right "by, through, or under" Westlands to the water provided by the government have an "adjustment" remedy against the government where a shortage of water or discontinuation or reduction in service occurs. That said, Article 11(b) explicitly states that the adjustment remedy is a reduction "on account of the amounts paid to the United States" by Westlands pursuant to other provisions in the 1963 contract. Because only Westlands under the 1963 contract has direct contractual privity with the government and is obligated to pay it money, the contested language of Article 11(b) can only sensibly refer to individuals or entities to whom Westlands has contractually assigned its rights and duties under the 1963 contract and who are now in contractual privity with the government. It cannot establish the inconsistent proposition that these same individuals or entities are intended third party beneficiaries of the contract.[4]
 
 
 33
 Article 15 and Article 11(b) merely show that the 1963 contract operates to the farmers' benefit and was entered into with the farmers "in mind." That by itself is not enough under Klamath to confer intended third-party beneficiary status on the farmers. See Klamath, 204 F.3d at 1212 ("Although the Contract operates to the Irrigators' benefit by impounding irrigation water, and was undoubtedly entered into with the Irrigators in mind, to allow them intended third party beneficiary status would open the door to all users receiving a benefit from the Project achieving similar status, a result not intended by the Contract."); see also id. ("[T]he recitation of constituencies whose interest bear on a government contract does not grant these incidental beneficiaries enforceable rights."). Because the 1963 contract does not "illustrate[] an intention of [Westlands] or the United States to grant [the farmers] enforceable rights," id. at 1211, the farmers do not qualify for the § 390uu waiver of sovereign immunity as intended third-party beneficiaries.[5]
 
 
 34
 Nor do the farmers qualify for the § 390uu waiver under recordable contracts between them and the government. Pursuant to the 1963 contract, the farmers entered into recordable contracts with the government in the late 1960s and early 1970s regarding the sale of, and the farmers' rights to receive water for, excess lands. Excess lands were lands owned by water users that exceeded the maximum acreage permitted to receive CVP water under federal reclamation law. The recordable contracts subjected the right to receive water for excess lands to the provisions of both the 1963 contract and each recordable contract. The recordable contracts also required the sale of excess lands within a ten-year period and set forth an appraisal procedure to determine sale prices.
 
 
 35
 The farmers allege that each recordable contract "fully incorporates" the 1963 contract, thereby entitling them to sue the government under § 390uu as contracting entities of the recordable contracts. We disagree. Far from "fully incorporating" the 1963 contract, Article 5 of the recordable contracts simply subjects the farmers' rights to receive CVP water to the provisions of the 1963 contract and of the recordable contract.[6] Each recordable contract directly incorporates only Articles 23, 24, and 25 of the 1963 contract, which relate to the provision of water to, and the valuation and sale of, excess lands. Yet the farmers are not attempting to enforce any of those provisions, or any other provision of the recordable contracts, in this lawsuit. Instead, they are suing for an alleged breach of the 1963 contract. The fact that the farmers are contracting entities to recordable contracts that reference the 1963 contract does not make the farmers intended beneficiaries of the 1963 contract or otherwise give them a right to enforce that contract.
 
 
 36
 The Barcellos judgment does not qualify the farmers for the § 390uu waiver of sovereign immunity, either. Paragraph 23 of that judgment expressly provides that the judgment shall not be considered a contract or an amendment for purposes of § 390uu: "Neither this Judgment nor the Stipulation for Compromise Settlement is a contract or an amendment to a contract with the United States as described in Section 203(a) of the 1982 Act." Thus, even though the farmers may be parties to the Barcellos judgment, that does not qualify them as "a contracting entity" for purposes of § 390uu.[7]
 
 
 37
 Finally, we reject the farmers' attempt to sue as trust beneficiaries. The farmers contend that Westlands acts as a trustee for them and that, because Westlands has failed to pursue a claim against the government, they may "step into the trustee's shoes" to sue. We disagree. Even if Westlands does act as a trustee for the landowners (an issue we do not decide), the farmers, as beneficiaries, have not met the requirements for suing in Westlands' shoes.
 
 
 38
 "[T]he beneficiary of a trust generally is not the real party in interest and may not sue in the name of the trust." Saks v. Damon Raike & Co., 7 Cal.App.4th 419, 8 Cal.Rptr.2d 869, 874-75 (1992). There is an exception to this rule, however. "[W]here a trustee cannot or will not enforce a valid cause of action that the trustee ought to bring against a third person, a trust beneficiary may seek judicial compulsion against the trustee. In order to prevent loss of or prejudice to a claim, the beneficiary may bring an action in equity joining the third person and the trustee. The beneficiary may also sue third persons who directly participated with the trustee in breaches of trust." Id. at 875 (internal citations omitted). The farmers have neither sought judicial compulsion against Westlands, nor alleged that the government "directly participated" with Westlands in any breach of trust. They have therefore failed to establish that they may sue in the shoes of Westlands.
 
 
 39
 In sum, the district court properly dismissed the farmers' claims for lack of jurisdiction on the ground that they were barred by sovereign immunity. The farmers do not qualify for the waiver of sovereign immunity under the McCarran Amendment because the McCarran Amendment does not apply to this suit for money damages. Nor do the farmers qualify for the waiver of sovereign immunity under § 390uu. The farmers are not intended third-party beneficiaries of the 1963 contract under Klamath, and neither the recordable contracts nor the Barcellos stipulated judgment makes them "a contracting entity" under § 390uu. Finally, the farmers have not met the requirements for suing in the shoes of Westlands as beneficiaries.
 
 
 40
 III. THE DISTRICT COURT'S RULINGS ON THE MERITS MUST BE VACATED
 
 
 41
 "The very purpose of the [sovereign immunity] doctrine is to prevent a judicial examination of the merits of the government's position." Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir.1987). Because the government never waived its immunity from suit, the district court never had jurisdiction to issue its rulings on the merits of the farmers' appropriative water rights, trust, and surcharge claims. See United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). This holds true despite the fact that the district court issued those rulings at a time when it had determined that sovereign immunity had been waived. See Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17, 71 S.Ct. 534, 95 L.Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation....").
 
 
 42
 We must therefore vacate as nullities the district court's rulings on the merits of the appropriative water rights, trust, and surcharge claims. As we stated in Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376 (9th Cir.1988), "If jurisdiction is lacking at the outset, the district court has `no power to do anything with the case except dismiss.'... If jurisdiction was lacking, then the court's various orders ... were nullities." Id. at 1380-81 (internal citations omitted); accord Finn, 341 U.S. at 18, 71 S.Ct. 534 (requiring a district court to vacate judgment after having determined that the district court lacked subject matter jurisdiction over the suit); United States v. 51 Pieces of Real Prop., Roswell, N.M., 17 F.3d 1306, 1309 (10th Cir.1994) ("[A] judgment is void if the court that enters it lacks jurisdiction over ... the subject matter of the action."); Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp., 739 F.2d 798, 804 n. 6 (2d Cir.1984) ("[A] judgment entered by a court lacking subject matter jurisdiction may not stand."); Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl.Ct. 406, 412 (1991) ("It is well settled that a question relating to subject matter jurisdiction goes to the very heart of our power to hear a controversy, and any decision on the merits rendered in the absence of such authority would, of course, be a nullity."). The district court's rulings on the merits of the appropriative water rights, trust, and surcharge claims shall not be binding in this or any other case. See United States v. Troup, 821 F.2d 194, 197 (3d Cir.1987) ("A lack of subject matter jurisdiction goes to the very power of a court to hear a controversy;... [the] earlier case can be accorded no weight either as precedent or as law of the case.") (quoting Ala. Hosp. Ass'n v. United States, 228 Ct.Cl. 176, 656 F.2d 606 (1981)) (alterations in original).
 
 
 43
 We recognize that, at times, "jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits." Careau Group v. United Farm Workers, 940 F.2d 1291, 1293 (9th Cir.1991). But that is not the case here. The determinations that § 390uu and the McCarran Amendment were inapplicable to the farmers, and that the farmers could not sue in the shoes of Westlands, depended in no way on the merits of the farmers' appropriative water rights, trust, or surcharge claims. Indeed, in determining today that the government has not waived sovereign immunity, we have had no need to explore the merits of those claims.
 
 
 44
 Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), relied on by the government and by the NRDC, compels no different result. In Bell, the complaint alleged federal question jurisdiction under the Constitution. Id. at 679, 66 S.Ct. 773. Because the complaint sought recovery directly under the Constitution, the Supreme Court held that the district court had jurisdiction over the suit. Id. at 681-82, 66 S.Ct. 773. The Supreme Court explained that the district court "must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." Id. at 682, 66 S.Ct. 773. The Court instructed that if the district court in exercising its jurisdiction determined that the complaint failed to state a claim, then the case would have to be dismissed on the merits, not for lack of jurisdiction. Id. The core holding in Bell was "that the nonexistence of a cause of action was no proper basis for a jurisdictional dismissal." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
 
 
 45
 Bell is inapposite because the jurisdictional defect in our case does not arise from "the nonexistence of a cause of action." It arises because the government has not waived its immunity against the farmers' claims. That defect is separate and apart from the merits of the claims that the district court ruled on. The sovereign immunity issue and the merits of the appropriative rights and trust claims are simply not intertwined, as the resolution of one does not depend on resolution of the other.
 
 IV. CONCLUSION
 
 46
 In summary, we affirm the district court's conclusion that sovereign immunity deprived it of jurisdiction to hear the farmers' claims. Because the district court lacked jurisdiction to entertain those claims, we vacate the rulings previously made by the district court on the merits of those claims.
 
 
 47
 AFFIRMED IN PART, VACATED IN PART, all parties to bear their own costs.
 
 
 
 Notes:
 
 
 [1]
 A general background of the CVP and the San Luis Unit was recently set forth by this court inWestlands Water Dist. v. United States, 337 F.3d 1092, 1095-96 (9th Cir.2003).
 
 
 [2]
 The McCarran Amendment reads in pertinent part:
 Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances....
 43 U.S.C. § 666(a) (1986).
 
 
 [3]
 The McCarran amendment also consents to suits for "administration of such rights," 43 U.S.C. § 666(a)(2). To come within § 666(a)(2), a suit must seek to enforce or administer rights of the sort covered by § 666(a)(1), already adjudicatedSee United States v. Hennen, 300 F.Supp. 256, 263 (D.Nev.1968). Though Orff (or a relative) might have had his general stream water rights considered and adjudicated in Barcellos and Barcellos I, the farmers do not point to specific rights adjudicated in either case that the reductions at issue violate. Rather, they are seeking to enforce rights they argue are implicitly incorporated in the contract. Adjudication of general water rights in the prior cases is therefore insufficient for a waiver of sovereign immunity under § 666(a)(2) in the case at bar. Moreover, finding otherwise and granting waiver under § 666(a)(2) in this case would still be counter to the holdings of Metropolitan Water Dist. and Dugan, which expressly limit the government's consent in waiving sovereign immunity under the McCarran Amendment to those cases that implicate "the rights of all claimants on a stream."
 
 
 [4]
 The farmers were never contractually assigned rights under the contract by Westlands, hence their current attempt to define themselves as intended third party beneficiaries
 
 
 [5]
 Our conclusion here and our decision inKlamath may be at odds with H.F. Allen Orchards v. United States, 749 F.2d 1571 (Fed. Cir.1984). In that case, farmers belonging to an irrigation district in Washington alleged that the Bureau had breached a contractual obligation to estimate accurately the amount of water it expected to supply them. Id. at 1573. The Federal Circuit concluded that the farmers were intended third-party beneficiaries of the contract at issue. Id. at 1576. That court did not, however, examine any contract language. Instead, it based its conclusion on the fact that the farmers were beneficial users of the water who ultimately paid for it. See id.
 As noted above, the mere fact that the farmers benefit from the 1963 contract is not enough to confer intended-beneficiary status on them. Rather, the law in our circuit requires an examination of the precise language of the contract for a "clear intent" to rebut the presumption that the farmers are merely incidental beneficiaries. Because no such clear intent is present in the contract, we cannot confer intended beneficiary status on the farmers. To the extent that the Federal Circuit employs a different approach and reaches a different result, we respectfully disagree.
 
 
 [6]
 Article 5 states in its entirety, "All rights of the Landowner to receive Project water for his excess land shall be subject to the provisions of the District Contract and this contract."
 
 
 [7]
 The district court ruled that, even if paragraph 3 of theBarcellos judgment permits the farmers to bring this lawsuit, the suit may not be brought in district court because the farmers seek damages exceeding $10,000. See 28 U.S.C. § 1346(a)(2). The court noted that the farmers may be able to bring this suit in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. As the farmers have not challenged this ruling on appeal, we do not consider it.