Sharnel SILVEY, Plaintiff–Appellant,

v.

CITY OF SPARKS, et al., Defendants–
Appellees.

No. 04–17506.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 15, 2006.*

Filed Jan. 5, 2007.

Jeffrey A. Dickerson, Esq., Reno, NV,
for Plaintiff–Appellant.

Brent T. Kolvet, Esq., Attorney at Law,
Greg Addington, Office of the U.S., Reno,
NV, Gretchen M. Wolfinger, Esq., Thomas
J. Clark, Attorney, U.S. Department of
Justice, Washington, DC, for Defendants–
Appellees.

Before: KLEINFELD and THOMAS,
Circuit Judges, and LEIGHTON,**
District Judge.

## MEMORANDUM ***

Sharnel Silvey appeals the dismissal of
both the United States and Storey County
Sheriff's Deputy Kenneth Quirk in her
Federal Tort Claims Act (FTCA) claim

---

* This panel unanimously finds this case suit-
able for decision without oral argument. *See*
Fed. R.App. P. 34(a)(2).

** The Honorable Ronald B. Leighton, United
States District Judge for the Western District
of Washington, sitting by designation.

*** This disposition is not appropriate for publi-
cation and may not be cited to or by the
courts of this circuit except as provided by
9th Cir. R. 36–3.

and her unlawful seizure claim under 42 U.S.C. § 1983.

## I.

As the parties are familiar with the facts and procedural history, we will not recount them here.

## II.

The Court reviews questions of the United States' sovereign immunity and police officers' qualified immunity de novo. *Orff v. United States,* 358 F.3d 1137, 1142 (9th Cir.2004); *Jackson v. City of Bremerton,* 268 F.3d 646, 650 (9th Cir.2001).

### A. The United States is Protected from Suit by Sovereign Immunity

The United States attacked subject matter jurisdiction on the ground that Agent Shiffer was engaged in the assessment or collection of a tax obligation under 28 U.S.C. § 2680(c),[1] thus entitling the United States to sovereign immunity.

The United States can only be sued by individuals to the extent that it waives sovereign immunity. *Cervantes v. United States,* 330 F.3d 1186, 1188 (9th Cir.2003). The FTCA has preserved the United States' sovereign immunity in 28 U.S.C. § 2680. *Id.,* quoting *Gager v. United States,* 149 F.3d 918, 920 (9th Cir.1998).

The three objectives most often mentioned in the legislative history as rationales for the enumerated exceptions are: ensuring that "certain governmental activities" not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which

adequate remedies [are] already available. *Kosak v. United States,* 465 U.S. 848, 858, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). "Where a § 2680 exception applies, the United States has not waived its immunity from suit, and a court lacks jurisdiction over such claims." *Cervantes,* 330 F.3d at 1188.

■ Here, because Agent Shiffer was conducting an assessment of Conforte's tax duty, the United States has not waived its sovereign immunity, and the district court therefore lacked subject matter jurisdiction over Silvey's claims against the United States.

### B. Deputy Quirk Committed No Constitutional Violation

In determining whether a defendant official is qualifiedly immune from suit, the Court examines two distinct questions. The Court must first determine from the facts, viewed in the light most favorable to her, whether Silvey has shown Deputy Quirk's conduct violated a constitutional right. *Deorle v. Rutherford,* 272 F.3d 1272, 1278 (9th Cir.2001); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Only if Silvey has shown that she was deprived of a constitutional right will the Court continue to the second element, "whether the right violated was clearly established in a particularized sense. . . ." *Deorle,* 272 F.3d at 1278–79 (internal quotations omitted). If the allegations are sufficiently established and there is still no violation of a constitutional right, however, the analysis ends there, and "there is no necessity for further inquiries concerning

---

1. The statute specifically reads, "The [FTCA] shall not apply to ... [a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer. . . ." 28 U.S.C. § 2680(c).

qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

Police officers are justified in seizing bystanders in conjunction with executing a search warrant by three law enforcement interests: 1) preventing flight if incriminating evidence is found; 2) minimizing the risk of harm to officers by exercising "unquestioned command of the situation;" and 3) facilitating the orderly completion of the search by ensuring occupants' presence. *Michigan v. Summers,* 452 U.S. 692, 702–703, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The bystanders' own safety is an additional consideration, and one which is particularly relevant here. Police officers must tailor the seizure to the justification; a seizure "becomes unlawful when it is 'more intrusive than necessary.' " *Ganwich v. Knapp,* 319 F.3d 1115, 1122 (9th Cir.2003), citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■ While he was not executing a search warrant, Deputy Quirk had a legitimate reason to seize Silvey and prevent her from entering the house, and he therefore committed no constitutional violation. He initially stopped Silvey from entering the house to prevent her from endangering herself and the officers, and to ask her questions about the man inside. Given the inherent danger of the situation, particularly Silvey's brazen attempt to pass Quirk and cross the other officers' line of fire, he acted to keep Silvey safe. Therefore, Deputy Quirk's initial seizure, preventing Silvey from entering the home, was reasonable, and he committed no constitutional violation.

Deputy Quirk's second seizure, placing Silvey in the patrol car, was also reasonable, and did not violate her constitutional rights. Just prior to placing Silvey in the car, Deputy Quirk heard reports over the radio that McLean had shouted something about a gun and shooting the other officers. The danger to any bystander, including Silvey, increased dramatically as a result of McLean's threat, and to continue keeping her safe, Deputy Quirk placed Silvey in the patrol car. She was able to exit the car any time she wished. Further, the incident occurred in December, and Deputy Quirk wanted to give Silvey a warm place to rest. Finally, when the officers decided to leave the scene, in order to de-escalate the situation, they released her immediately. Silvey was detained for a total of approximately thirty minutes, and was never handcuffed. This amount of time is vastly shorter than the three hours in handcuffs the Supreme Court found to be reasonable in *Muehler v. Mena,* 544 U.S. 93, 95, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005).

In light of the circumstances surrounding the events that occurred after Deputy Quirk radioed for assistance, and Silvey's reckless attempt to enter the house, crossing the officers' line of fire, as well as McLean's statement about having a gun and shooting the other officers, Deputy Quirk's seizure of Silvey was eminently reasonable, and he did not violate any of her constitutional rights.

### III.

The United States is protected from suit by sovereign immunity, as Agent Shiffer was conducting the assessment of a tax, under 28 U.S.C. § 2680(c), and the district court's dismissal under Fed.R.Civ.P. 12(b)(1) was proper. Deputy Kenneth Quirk committed no constitutional violation, and the district court's summary dismissal of the claims against him were also proper.

**AFFIRMED.**