12-3302-cv
Hillside Metro Associates, LLC v. JPMorgan Chase Bank, N.A.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: June 13, 2013          Decided: February 4, 2014)

Docket No. 12-3302-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

HILLSIDE METRO ASSOCIATES, LLC,

Plaintiff - Appellee,

v.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

Defendant - Appellant,

— and —

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR WASHINGTON MUTUAL BANK,

Intervenor - Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: POOLER, LOHIER, and CARNEY, Circuit Judges.

Appellants the Federal Deposit Insurance Corporation ("FDIC") and
JPMorgan Chase Bank, National Association ("Chase") appeal from a
judgment of the United States District Court for the Eastern District of New

York (Gleeson, J.) granting summary judgment in favor of plaintiff Hillside Metro Associates, LLC ("Hillside"), a landlord. The District Court held that Hillside, which leased premises to Washington Mutual Bank ("WaMu") just before the financial crisis of 2008, had third-party standing to enforce the alleged assignment of that lease to Chase pursuant to a purchase agreement between the FDIC, acting as WaMu's receiver, and Chase. The FDIC had previously repudiated the lease under section 212(e) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(e), and both the FDIC and Chase assert that their agreement did not in fact assign the lease. We VACATE and REMAND to the District Court with instructions to dismiss Hillside's complaint for lack of subject matter jurisdiction.

R. KEMP KASLING, Kasling, Hemphill, Dolezal, & Atwell, L.L.P., Austin, Texas (Thomas E.L. Dewey, Adam M. Smith, Dewey Pegno & Kramarsky LLP, New York, New York, on the brief), for Plaintiff-Appellee.

HEATHER L. HOPKINS, Morgan, Lewis & Bockius LLP, New York, New York, for Defendant-Appellant.

JOSEPH BROOKS, Federal Deposit Insurance Corporation, Arlington, Virginia (Colleen J. Boles, Assistant General Counsel, Kathryn Norcross, Acting Assistant General Counsel, Lawrence H. Richmond, Senior Counsel, Federal Deposit Insurance Corporation, Arlington, Virginia, on the briefs), for Intervenor-Appellant.

LOHIER, Circuit Judge:

Appellants the Federal Deposit Insurance Corporation (the "FDIC") and JPMorgan Chase Bank, National Association ("Chase") appeal from a judgment of the United States District Court for the Eastern District of New York (Gleeson, J.) granting summary judgment in favor of plaintiff Hillside Metro Associates, LLC ("Hillside"). This litigation arises out of the failure of Washington Mutual Bank ("WaMu") and the assumption of WaMu's assets and liabilities by Chase from the FDIC, acting in its capacity as WaMu's receiver. The District Court held that Hillside, which owned premises leased by WaMu just before the financial crisis, had third-party standing to enforce the alleged assignment of WaMu's real estate lease to Chase pursuant to a purchase agreement between the FDIC and Chase, even though the FDIC validly repudiated the lease and the parties to the purchase agreement assert that it did not in fact assign the lease. We vacate the judgment of the District Court and remand with instructions to dismiss Hillside's complaint for lack of subject matter jurisdiction.

# BACKGROUND

This appeal arises out of the well-chronicled financial crisis of 2008 and the threat it posed to the National economy. The crisis resulted in WaMu's collapse in September 2008 and the appointment of the FDIC as WaMu's receiver. Chase immediately assumed many of WaMu's assets and liabilities from the FDIC pursuant to a Purchase and Assumption Agreement (the "PAA" or the "Agreement") between Chase and the FDIC. The question before us is whether Hillside has standing to assert that a lease between WaMu and Hillside was among the assets and liabilities Chase assumed under the Agreement.

1. Facts

The facts are not in dispute. In April 2008 Hillside and WaMu entered into a ten-year lease for the premises at 216-20 Hillside Avenue, Queens, New York, a former video store. The parties to the lease intended that the premises would be used as a WaMu bank branch, and plans for renovating the store on the premises were attached to the lease. The store was never converted into a bank branch. See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.

("Hillside II"), No. 10–CV–1772 (JG)(SMG), 2012 WL 1611830, at *5 (E.D.N.Y. May 9, 2012).

On September 25, 2008, the Office of Thrift Supervision declared WaMu insolvent, and the FDIC was appointed as WaMu's receiver. That same day, consistent with its practice of entering into timely agreements with acquiring financial institutions, the FDIC entered into the PAA with Chase. The PAA assigned to Chase both WaMu's assets and its liabilities, with enumerated exceptions.

As relevant here, pursuant to section 3.1 of the PAA, Chase acquired most of WaMu's real property leases, but not its "leased Bank Premises." The PAA defined "Bank Premises" as:

> the banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by [WaMu] and that are occupied by [WaMu] as of Bank Closing.

Instead, section 4.6(a) of the PAA granted Chase the option to accept or decline assignment of each Bank Premises within 90 days of signing the PAA.[1]

The PAA contained two more provisions that are important to the resolution of this appeal. First, section 13.5 provided that the PAA was entirely for the benefit of the FDIC—in its capacity both as a government entity ("the Corporation") and as Receiver—and Chase as the Assuming Bank, and it expressly ruled out any intent to benefit third parties:

> Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and the Assuming Bank any legal or equitable right, remedy or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Bank and for the benefit of no other Person.

Second, section 13.4 provided that the Agreement would be governed by federal law or, in the absence of controlling federal law, by the laws

---

[1] By contrast, leases of non-Bank Premises fell into the category of "Other Real Estate" and were assigned to Chase outright.

6

of the State where the "main office of [WaMu] is located."[2]

By the end of 2008 the FDIC and Chase had agreed that WaMu's lease with Hillside was a lease for Bank Premises. By January 2009 Chase had notified both Hillside and the FDIC pursuant to section 4.6(a) of the PAA that it had declined assignment of (and would not assume) the lease. Prompted by Chase's notice of declination, the FDIC determined that complying with the lease would burden its receivership of WaMu. Accordingly, in April 2009 the FDIC notified Hillside that it would exercise its authority under section 212(e) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(e), to repudiate the lease. As a result of the repudiation, Hillside's recovery against the FDIC was limited to the unpaid rent that had accrued before repudiation. See 12 U.S.C. § 1821(e)(4). For its own reasons, however, Hillside declined to seek recovery from the FDIC under 12 U.S.C. § 1821(e). Instead, Hillside sought recovery from Chase, taking the position that Chase had assumed the lease under the PAA and was in default. In turn, Chase took the position that it did not assume the lease, and refused to pay the unpaid rent.

---

[2] As set forth below, federal law governs the relevant provisions of the PAA, while New York law governs Hillside's lease.

## 2. Procedural History

In March 2010 Hillside sued Chase in the Eastern District of New York for failure to pay the amounts due under the lease. The FDIC successfully moved to intervene. In May 2011 Hillside moved for summary judgment. Chase opposed the motion and cross-moved for summary judgment, while the FDIC also opposed the motion and cross-moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(1) or 12(c). Chase and the FDIC argued principally that Hillside lacked standing to sue Chase for breach of the lease because Hillside was neither a party to nor a third-party beneficiary of the PAA.

In October 2011 the District Court denied all of the parties' motions. See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A. ("Hillside I"), No. 10-CV-1772 (JG)(SMG), 2011 WL 5008368 (E.D.N.Y. Oct. 20, 2011). The court acknowledged that there was a split of authority on the issue of whether a landlord in Hillside's position had standing to sue in similar cases involving the FDIC. It noted that some courts had held that the PAA could not establish privity between the landlord and the assuming bank because the landlord was not an intended third-party beneficiary of the PAA, while other courts

8

viewed the PAA's assignment provisions as establishing privity between the landlord and the assuming bank on the theory that the provisions effected an assignment of the lease to the bank. Relying on Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998), the District Court concluded that Hillside had standing to sue Chase because Hillside's interpretation of the PAA as having assigned the lease to Chase plausibly placed Chase and Hillside in privity of estate and gave Hillside a legally protected interest in the enforcement of the PAA. It also concluded that Hillside had standing to assert a claim under New York property law, even if the Agreement precluded a breach of contract claim.

In denying the cross-motions for summary judgment, the District Court asserted that it had insufficient evidence to determine whether the property constituted "Bank Premises" under the Agreement. It permitted the parties to submit more evidence on the issue. In May 2012, with the benefit of additional evidence, the District Court concluded that the lease was not for Bank Premises under the PAA because the video store had not been fully converted into a bank by the time WaMu failed. Accordingly, it held that "the lease was automatically assumed by Chase through Section 3.1 of the

9

PAA" and granted Hillside's motion for summary judgment as to Chase's liability.[3]

Chase and the FDIC appealed.

**DISCUSSION**

The sole issue on appeal is whether Hillside has standing to sue Chase for breach of the lease based on Hillside's own interpretation of the PAA when it was neither a party to nor an intended third-party beneficiary of the PAA. In asserting that it has standing, Hillside argues that under New York property law, which governs the lease, it had a right to have a court determine whether the PAA assigned the lease to Chase. The FDIC responds that under federal common law (or, alternatively, under New York common law) only the parties to and intended third-party beneficiaries of a contract such as the PAA have the right to interpret and enforce its terms.[4]

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its

_____

[3] The parties do not challenge the District Court's ruling that the leased property did not qualify as Bank Premises under the PAA.

[4] Chase has adopted the FDIC's brief and makes no additional arguments of its own.

10

exercise.'" Kowalski v. Tesmer, 543 U.S. 125, 128–29 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). When both limitations present themselves, we may assume Article III standing and address "the alternative threshold question" of whether a party has prudential standing. Id. at 129. In other words, we may "consider third-party prudential standing even before Article III standing." Deutsche Bank Nat'l Trust Co. v. FDIC, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013). We conclude that Hillside does not have prudential standing in this case because it cannot enforce the terms of the PAA, as to which it is neither a party nor a third-party beneficiary, but the enforcement of which is a necessary component of its claim.

First, with respect to the applicable law, the parties do not seriously dispute on appeal that federal common law governs our interpretation of the PAA, a federal government contract. See Overseas Nat'l Airways, Inc. v. United States, 766 F.2d 97, 102 (2d Cir. 1985) (citing Clearfield Trust Co. v. United States, 318 U.S. 363, 364 (1943)). To apply "federal common law of contract," we look to "general principles of contract law." Dobson v. Hartford Fin. Servs. Grp., Inc., 389 F.3d 386, 399 (2d Cir. 2004). "[A]bsent a contractual relationship there can be no contractual remedy." Suffolk Cnty. v.

11

*Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984). Such a relationship exists if the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the contract. Proving third-party beneficiary status requires that the contract terms "'clearly evidence[] an intent to permit enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (alteration in original) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)). In the case of government contracts, "individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Restatement (Second) of Contracts § 313 cmt. a (1981); *see also Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 933 (11th Cir. 2013); *GECCMC 2005-C1 Plummer St. Office L.P. v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012).

These principles are hardly unique to federal common law. "It is ancient law in New York," for example, "that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." *Long*

12

Island Lighting Co., 728 F.2d at 63 (citing Lawrence v. Fox, 20 N.Y. 268 (1859)).

Second, the PAA does not clearly manifest an intent to benefit or permit enforcement by Hillside. To the contrary, section 13.5 of the PAA states that "nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the [FDIC acting as] Receiver, the [FDIC in its capacity as] Corporation and [Chase as] the Assuming Bank any legal or equitable right, remedy or claim under . . . this Agreement," as the PAA is "for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Bank and for the benefit of no other Person." Joint App'x at 83, § 13.5.

Third, in the absence of a contractual relationship under the PAA, Hillside cannot prevail because its claim to damages under the lease necessarily requires that the provisions of the PAA relating to assignments be interpreted and enforced in a way that contradicts section 13.5's disclaimer of any third-party benefits.

Finally, our holding is consistent with that of most other sister Circuits to have addressed the issue involving the same PAA. See Interface Kanner,

13

704 F.3d at 933 (rejecting plaintiff's privity of estate argument); GECCMC, 671 F.3d at 1032–33 (holding that plaintiff landlord could not "bring suit under the [PAA] because [it] is not an intended third-party beneficiary of the Agreement"); see also Deutsche Bank, 717 F.3d at 194 ("Insofar as [the non-contracting parties] wish to be heard on the specific question of contract interpretation, they are effectively seeking to enforce the rights of third parties (here, the FDIC), which the doctrine of prudential standing prohibits.").[5]

For these reasons, we hold that Hillside lacks prudential standing to litigate whether WaMu's liabilities were assigned to Chase under the PAA

[5] In Excel Willowbrook, L.L.C. v. JPMorgan Chase Bank, N.A., No. 12-20367, 2014 WL 103700 (5th Cir. Jan. 10, 2014), the Fifth Circuit agreed that landlords on certain WaMu leases were not intended beneficiaries of the PAA. Nevertheless, the court proceeded to interpret the assignment provisions of the PAA, concluding that the Agreement had assigned those leases to Chase and that the FDIC was therefore without authority to repudiate leases that had already been assigned. Id. at *4–5. Finally, the court held that the landlords had standing because the assignment of the leases to Chase put the landlords in privity of estate with Chase. Id. at *5.

Respectfully, we are not persuaded by Excel Willowbrook. It seems to put the merits cart before the standing horse: whether the PAA assigned leases to Chase is the merits issue that the Fifth Circuit addressed, but "the question of standing is whether the litigant is entitled to have the court decide the merits of the . . . particular issue[]." Warth, 422 U.S. at 498. Because Hillside lacks prudential standing to ask us to interpret the PAA, we are without jurisdiction to determine whether the PAA assigned the lease in this case to Chase.

14

because it was neither a contracting party nor a third-party beneficiary under the Agreement.

In urging a contrary conclusion, Hillside asks us to consider New York property law, and to view this case simply as one in which a landlord seeks to collect rent from an assignee of a lease. Under New York law, "[w]here a lessee assigns his whole estate, without reserving any reversion therein in himself, a privity of estate is at once created between his assignee and the original lessor, and the latter has a right of action directly against the assignee, on the covenant to pay rent, or any other covenant in the lease which runs with the land . . . ." Stewart v. Long Island R.R. Co., 102 N.Y. 601, 607 (1886); see also 74A N.Y. Jur. 2d Landlord & Tenant § 790 ("An assignment is effective immediately, and upon an assignment, there is an immediate privity of estate between the owner or lessor and the assignee."). Both privity of contract and privity of estate may exist between a landlord and a tenant. But when a tenant assigns the lease and transfers its entire interest in the real property to a third party, only privity of estate exists between the landlord and the assignee to render the assignee liable to the landlord. New Amsterdam Cas. Co. v Nat'l Union Fire Ins. Co., 266 N.Y. 254,

259 (1935). Even assuming that principles of privity of estate obtain, however, a lessor does not have standing to interpret and enforce a federal assignment contract like the PAA, with respect to which the lessor is neither a contracting party nor an intended third-party beneficiary, where the only parties to the contract unequivocally disclaim an intent to assign the lease, and where the FDIC as receiver is statutorily authorized to, and does, repudiate the lease as burdensome under FIRREA.

The privity of estate argument rests on an interpretation of the underlying assignment contract (here, the PAA) and assumes that an assignment has occurred. The argument fails "because it is dependent on [plaintiff]'s ability to enforce its interpretation of the [PAA], which, as discussed above, [plaintiff] lacks standing to do." Interface Kanner, 704 F.3d at 933. In addition, FIRREA grants the FDIC extensive powers as a receiver to cut off privity of estate under these limited circumstances by repudiating the leases of a failed bank. Specifically, section 212(e) of FIRREA authorizes the FDIC to repudiate the leases of a failed bank within a "reasonable period" after the FDIC's appointment as receiver. 12 U.S.C. § 1821(e)(1)–(2). While the FDIC may be liable for damages resulting from the repudiation of a lease,

16

12 U.S.C. § 1821(e)(4), those damages are limited to compensatory damages (including prior unpaid rent) determined as of the date of the FDIC's appointment and any "contractual rent accruing" prior to the repudiation, 12 U.S.C. § 1821(e)(3)(A), (e)(4)(B)(i)–(iii).  In short, the statutory scheme under FIRREA makes clear that the FDIC, as receiver, could repudiate its lease with Hillside.  In our view, FIRREA makes equally clear that Hillside's recourse to sue for unpaid rent or other damages as a result of the alleged breach of its lease was against the FDIC, not Chase.

Finally, we note that our conclusion accords with one of the purposes of FIRREA, which is "[t]o provide funds from public and private sources to deal expeditiously with failed depository institutions," FIRREA, Pub. L. No. 101-73, § 101(8), 103 Stat. 183, 187, and "to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation," Nat'l Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 388 (3d Cir. 1994).  Permitting Hillside to proceed against Chase would risk significantly curtailing the FDIC's "extensive [statutory] power and discretion to manage the affairs of the failed

bank," GECCMC, 671 F.3d at 1030, as well as its authority to repudiate leases with respect to which the failed bank was the lessee.

**CONCLUSION**

For the foregoing reasons, we VACATE the judgment of the District Court and REMAND with instructions to dismiss the complaint for lack of subject matter jurisdiction.