NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 21 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION, a California non-profit public-benefit corporation, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> APEXUS, LLC, a Delaware limited liability company, <br><br> Defendant-Appellee. | No. 23-55425 <br><br> D.C. No. 2:22-cv-08450-PA-E <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted April 11, 2024
Pasadena, California

Before: MURGUIA, Chief Judge, and MENDOZA and DE ALBA, Circuit
Judges.

Plaintiff-Appellant AIDS Healthcare Foundation ("AIDS Healthcare") sues

Defendant-Appellee Apexus, LLC ("Apexus") for allegedly breaching the Prime

Vendor Agreement between Apexus and the Health Resources and Services

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Administration ("HRSA"), issued pursuant to § 340B of the Public Health Services Act, 42 U.S.C. § 256b. Applying the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), the district court dismissed AIDS Healthcare's complaint with prejudice. It reasoned that AIDS Healthcare could not sue as an intended beneficiary of the Prime Vendor Agreement to challenge Apexus's alleged failure to negotiate sufficiently discounted pricing for prescription medications on AIDS Healthcare's behalf. We have jurisdiction under 28 U.S.C. § 1291; we review de novo a district court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022); and we affirm.

1. Neither Apexus nor HRSA clearly intended to render AIDS Healthcare an intended beneficiary of the Prime Vendor Agreement. "A third party that wishes to sue under a government contract must demonstrate that it is an intended beneficiary of the contract, rather than merely an incidental one." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016). To demonstrate intended-beneficiary status, a plaintiff must show that "the contracting parties" clearly intended to grant the nonparty plaintiff "*enforceable rights*." *Id.* (quoting *Orff v. United States*, 358 F.3d 1137, 1147 (9th Cir. 2004)). We divine that intent by "examin[ing] the precise language of the contract," using "general principles for interpreting contracts." *GECCMC 2005-C1 Plummer St. Off. Ltd.*

2

*P'ship v. JP Morgan Chase Bank, Nat'l Ass'n* (*Plummer Street*), 671 F.3d 1027, 1033–34 (9th Cir. 2012) (internal quotations and citations omitted).

The Prime Vendor Agreement's alleged requirements do not "overcome the presumption against third-party beneficiaries" established by our case law and Supreme Court precedent. *See Plummer Street*, 671 F.3d at 1029–31, 1034. Entities like AIDS Healthcare are discussed in the agreement and clearly benefit from its operation. But intended-beneficiary status cannot be established merely by "explicit reference to a third party," *Orff*, 358 F.3d at 1145; a showing that the contract "was entered into with [nonparty plaintiffs] in mind," *Plummer Street*, 671 F.3d at 1033 (quoting *Orff*, 358 F.3d at 1147) (cleaned up); or allegations that the contract "operates to the [third parties'] benefit," *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1212 (9th Cir. 1999), and provides them with concrete benefits, *see Orff*, 358 F.3d at 1145; *see also Astra*, 563 U.S. at 117–18 (regarding as relevant but insufficient specific references to covered entities in other § 340B contracts to establish intended beneficiary status).

AIDS Healthcare points us to Apexus's contractual obligation to provide "price negotiating services" that guarantee "the most advantageous sub-ceiling prices" on medications for entities like itself. But we have long held that such "hortatory statement[s] of purpose at best might qualify [third parties] as incidental beneficiaries," a status that "does not confer enforceable rights." *Smith v. Cent.*

3

*Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1037 (9th Cir. 2005); *see also Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (considering contractual language that required a signatory to "facilitate the most effective, efficient and ubiquitous registration services possible" on behalf of third parties and holding that such language "does not indicate a clear intent to grant" those third parties "enforceable contract rights").  Put simply, AIDS Healthcare's allegations and the Prime Vendor Agreement's terms do not demonstrate Apexus's or HRSA's clear intent to permit intended-beneficiary suits to enforce the Agreement.

Section 340B's underlying statutory framework confirms that, as pled, AIDS Healthcare cannot sue in federal court as an intended beneficiary to Apexus's and HRSA's Prime Vendor Agreement.  When a "contract is mandated by a federal statute," we also consider "the 'governing statute and its purpose'" in our analysis. *See County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1245 (9th Cir. 2009) (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 706 (4th Cir. 2007)), *rev'd on other grounds by Astra*, 563 U.S. 110; *see also Plummer Street*, 671 F.3d at 1035 (directing courts to consider the "circumstances of the transaction," which includes the governing statute that mandated the contract (internal quotation marks and citation omitted)). Congress enacted § 340B to lower prices for prescription drugs under Medicaid by encouraging drug manufacturers to offer discounted drugs to "covered entities"—namely, healthcare providers like

4

AIDS Healthcare—in exchange for Medicaid coverage of those drugs. *See County of Santa Clara*, 588 F.3d at 1246; 42 U.S.C. § 256b(a)(1), (4). To facilitate that goal, Congress anticipated that HRSA would enter into an agreement with a prime vendor like Apexus to distribute those discounted drugs. *See* 42 U.S.C. § 256b(a)(8). But as the Court reasoned in *Astra*, § 340B evinces no Congressional intent to permit covered entities to directly enforce those statutory obligations in federal court. *See* 563 U.S. at 119–21. Not only does § 340B lack a private right of action, but it does not permit covered entities like AIDS Healthcare "to sue for overcharges under the statute itself." *Id.* at 113. In fact, "Congress vested authority to oversee compliance with the 340B Program in [the Department of Health and Human Services] and assigned no auxiliary enforcement role to covered entities" like AIDS Healthcare. *Id.* at 117.

Although this case is not *Astra* redux, we cannot ignore Congress's intentions regarding the implementation of § 340B or its interaction with the broader Medicaid program. The Prime Vendor Agreement largely derives from and incorporates § 340B's statutory terms, and it anticipates that Apexus will negotiate sub-ceiling pricing set by statute. And, as *Astra* warned, permitting suits like AIDS Healthcare's to proceed would "undermine the [government's] efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." 563 U.S. at 120. To allow such suits would, instead, "spawn a multitude of

5

dispersed and uncoordinated lawsuits" by covered entities, creating an unmanageable risk of "conflicting adjudications." *Id.*; *see also Plummer Street*, 671 F.3d at 1035; *County of Santa Clara*, 588 F.3d at 1248 ("The breadth and indefiniteness of a class of beneficiaries is entitled to some weight in negating the inference of intended beneficiary status."). Our precedent, balanced alongside the Congressional imperatives of the 340B Program and the Agreement's clear terms, dictates that AIDS Healthcare's lawsuit is not premised on enforceable rights under the Prime Vendor Agreement. Of course, nothing in our conclusion impedes HRSA from properly enforcing the Agreement's obligations.

2. We will not disturb the district court's dismissal of AIDS Healthcare's claim under California's Unfair Competition Law ("UCL") or its claim for declaratory relief. California's UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. As we held in *Caltex Plastics*, AIDS Healthcare is "prohibited from 'bootstrap[ping]' an unfair-competition claim using a failed breach-of-contract claim, because '[p]ermitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary.'" 824 F.3d at 1161 (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Ct. App. 2007)). AIDS Healthcare's current and proposed allegations stem exclusively from Apexus's failure to meet its express and implied obligations

6

under the Prime Vendor Agreement. Additionally, and regardless of whether § 340B "preempt[s] States from maintaining state-law fraud claims," *Astra*, 563 U.S. at 120 n.5 (taking no position on preemption), AIDS Healthcare does not allege any violations of § 340B. Indeed, AIDS Healthcare concedes that Apexus has distributed drugs and provided medications at or below the § 340B price ceiling, as § 340B requires. Thus, AIDS Healthcare has failed to state a plausible unlawful- or unfair-competition claim. And, given the lack of justiciable controversy, AIDS Healthcare is not entitled to declaratory relief. *See Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (noting that the Declaratory Judgment Act "does not create new substantive rights, but merely expands the remedies available in federal courts"); *see also Cal. Ins. Guar. Ass'n v. Superior Ct.*, 283 Cal. Rptr. 104, 108 (Ct. App. 1991) (reasoning similarly under California law).

**AFFIRMED.**